UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DICK DENNIS SHELBY,
Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

Case No. 1:10-cv-316
Spiegel, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6), the Commissioner's Memorandum in Opposition (Doc. 11), and plaintiff's Reply Memorandum. (Doc. 12).

## PROCEDURAL BACKGROUND

Plaintiff was born in 1947 and was 60 years old at the time of the ALJ's decision.[1] Plaintiff has an eighth-grade education and past relevant work experience as a cook, food packer, kitchen manager, and phone technician. (Tr. 107, 120, 123).

Plaintiff filed an application for DIB on August 24, 2006, alleging disability since January 1, 2001[2], due to arthritis in his feet and ankles and back pain. (Tr. 89-93, 119). His application was denied initially and upon reconsideration. Plaintiff requested and was granted a *de novo* hearing before an administrative law judge (ALJ). On September 18, 2008, plaintiff, who was

---

[1] Plaintiff was 57 years old at the time his insured status expired in September 2005.

[2] Plaintiff later amended his alleged disability onset date to June 1, 2005. (Tr. 84).

represented by counsel, appeared and testified at a hearing before ALJ Donald G. Smith. (Tr. 20-40). A vocational expert (VE), Micha A. Daoud, also appeared and testified at the hearing. (Tr. 40-48).

On September 30, 2008, the ALJ issued a decision denying plaintiff's DIB application. (Tr. 9-14). The ALJ determined that plaintiff last met the insured status requirements for DIB on September 30, 2005. (Tr. 11). The ALJ next found that plaintiff suffers from no medically determinable impairment through the date last insured. *Id.* The ALJ also determined that as of the date plaintiff's insured status lapsed plaintiff did not have medical proof of an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months; therefore, he did not have a severe impairment or combination of impairments. *Id.* According to the ALJ, plaintiff was not under a disability at any time from June 1, 2005, the alleged amended onset date, through September 30, 2005, the date he was last insured. (Tr. 14).

Plaintiff's request for review by the Appeals Council was denied (Tr. 1-5), making the decision of the ALJ the final administrative decision of the Commissioner.

Plaintiff also filed an application for SSI on August 26, 2006, and was found disabled as of August 2006, under grid Rule 201.02. (Tr. 151-52).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they

2

are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). If the impairment meets or equals any within the Listing, disability is presumed and

3

benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981).

The Commissioner is required to consider the individual's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 404.1525(a). If the individual suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of the individual's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk*, 667 F.2d at 528.

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of H.H.S.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by

4

showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of H.H. S.*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of H. H. S.*, 820 F.2d 768, 771 (6th Cir. 1987).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson* v. *Secretary of H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner* v. *Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987).

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual

5

functional capacity (determined at step four) and vocational profile." *Jones v. Commissioner of Social Sec.,* 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner may meet his burden of identifying other work the claimant can perform through reliance on a vocation expert's testimony to a hypothetical question. To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the vocational expert must accurately reflect the claimant's mental and physical limitations. *Ealy v. Commissioner of Social Security,* 594 F.3d 504, 516 (6th Cir. 2010); *Howard v. Commissioner of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002); *Felisky* v. *Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.,* 39 F.3d 115, 118 (6th Cir. 1994).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Secretary of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers,* 486 F.3d at 247. Rather, such

6

determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

## MEDICAL RECORD

The record shows that an MRI was scheduled for May 11, 2005, but the results are not in the record. (Tr. 200).

On July 27, 2005, a doctor at University Hospital in Cincinnati (UHC) reported that plaintiff had significant pain which caused difficulty with ambulation and his "disability can be expected for the next 3-6 months." (Tr. 198).

Plaintiff presented to the emergency room at UHC on August 21, 2006, complaining of left knee and right ankle pain. (Tr. 175-79). Examination revealed slight erythematous and slight edema in the right ankle. Plaintiff was diagnosed with arthritis, given pain medication, and prescribed crutches. The emergency room physician reported that plaintiff was okay to go back to work. (Tr. 178). X-rays did show significant joint arthritis. *Id.*

On September 6, 2006, Dr. Jordan Bonomo, a physician at UHC, reported that plaintiff "has arthritis severely in both ankles and knees, which may last for five years or maybe the rest of his life. This condition limits his ability to walk except with crutches at times." (Tr. 197).

Loraine Glaser, M.D., a medical consultant, examined plaintiff on October 12, 2006. (Tr. 180-87). Plaintiff reported to Dr. Glaser that he suffered from pain in his feet, ankles, and knees noting that his back pain was not as troublesome. Dr. Glaser found a slow and broad based antalgic gait with use of crutches; tenderness on palpation in the right hip; and reduced range of motion in the back, hips, knees, and ankles. The right ankle also appeared swollen. X-rays of the lumbar spine showed marked narrowing at L5-S1. (Tr. 187). Dr. Glaser diagnosed morbid obesity, degenerative joint disease, and untreated and uncontrolled hypertension. Dr. Glaser opined that plaintiff appeared capable of performing only a mild amount of ambulating, standing, bending, pushing, pulling, lifting, and carrying heavy objects. Dr. Glaser concluded that plaintiff should be able to perform sedentary tasks commensurate with his age. (Tr. 182).

On November 28, 2006, Anton Freihofner, M.D., reviewed the file and completed a residual functional capacity assessment. (Tr. 188-95). Dr. Freihofner opined that plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; stand and/or walk at least 2 hours in an 8 hour workday; sit about 6 hours in an 8 hour workday; occasionally push/pull with the lower extremities; occasionally climb ramps and stairs; occasionally stoop and crawl; never balancing, kneeling, and crouching; and never climbing ladders, ropes, or scaffolds. Dr. Freihofner noted that there was insufficient evidence of a "severe" medically determinable impairment prior to September 30, 2005, when plaintiff's insured status expired. (Tr. 189).

8

Plaintiff treated at the Mayfield Clinic from January 29, 2007 to June 4, 2007. (Tr. 201-10). Plaintiff reported pain in his back running down the right leg. Physical examination showed tenderness in the lumbosacral area. *Id.* An MRI of the lumbar spine taken on February 27, 2007, revealed discogenic disease and facet arthrosis in the lower lumbar spine, with residual or recurrent disc at L5/S1 contacting a thickened left S1 nerve root. There is moderate central stenosis at L4/5. (Tr. 209-10). On April 4, 2007, Dr. Berger reported that plaintiff was not a candidate for injections or surgery until his hypertension was better controlled. (Tr. 205).

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified at the administrative hearing that he had back surgery in 1998 and his condition has continually worsened. (Tr. 28-29, 33). He indicated that he has severe pain in his back that radiates down the right leg. (Tr. 28-29). He also has pain in his right ankle. He suffers from hypertension but it did not cause him problems. *Id.* He sees his doctor "every couple of months, or whenever they want me to come down and get checked out." (Tr. 33). The back pain limits him to sitting, standing, and walking no more than 15 minutes at a time without changing positions. He does not think he can lift more than 10 pounds. (Tr. 30). He is unable to bend, stoop, or crouch without exacerbating his pain. (Tr. 31). The pain also interferes with his sleeping, limiting him to only 4 hours of sleep per night. (Tr. 32). Plaintiff rated his pain as an 8 on an 8/10 pain scale. *Id.* Plaintiff testified that his diabetes is controlled on medication. (Tr. 34). He occasionally uses a wheelchair prescribed by his doctor to move around. (Tr. 35). He stays home most of the time, although he can drive very short distances. (Tr. 35-37). He is unable to do housework and also does not work around the yard. (Tr. 36). He is able to take care of personal grooming. (Tr. 37).

9

## OPINION

The pertinent period of time at issue concerns plaintiff's work abilities and limitations between June 1, 2005 until September 30, 2005. (Tr. 21, 95). To establish his claim for disability benefits, plaintiff was required to establish that he was disabled on or before September 30, 2005, the date his insured status expired for purposes of Disability Insurance Benefits. *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). While plaintiff was not required to prove he was disabled for a full twelve months *prior* to the expiration of his insured status, he was required to prove "the onset of disability" prior to the expiration of his insured status and that such disability lasted for a continuous period of twelve months. *See Gibson v. Secretary*, 678 F.2d 653, 654 (6th Cir. 1982); 42 U.S.C. § 423(d)(1)(A).

Post insured status evidence of new developments in plaintiff's condition is generally not relevant. *Bagby v. Harris*, 650 F.2d 836 (6th Cir. 1981). *See also Higgs v. Bowen*, 888 F.2d 860, 863 (6th Cir. 1988) (Evidence post-dating the expiration of a claimant's insured status is only minimally probative). However, such evidence may be examined when it establishes that the impairment existed continuously and in the same degree from the date that plaintiff's insured status terminated. *Johnson v. Secretary of H.E.W.*, 679 F.2d 605 (6th Cir. 1982). *See also King v. Sec. of Health and Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990) (Post-expiration evidence may be considered, but it must relate back to plaintiff's condition prior to the expiration of her date last insured).

Plaintiff assigns three errors in this case. First, plaintiff contends the ALJ erred by failing to find that he suffered from a severe impairment from the alleged amended onset date of June 1, 2005 through plaintiff's date last insured of September 30, 2005. Second, plaintiff argues the

10

ALJ violated Social Security Ruling 83-20 (1983) in establishing the onset date of the disability. Finally, plaintiff contends that the ALJ failed to find that his allegations of disabling back pain were entirely credible.

### I. Substantial evidence supports the ALJ's finding that plaintiff did not suffer from a severe impairment from the alleged amended onset date of June 1, 2005 through plaintiff's date last insured of September 30, 2005.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimus* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers v. Commissioner*, 486 F.3d 234, 243 n.2 (6th Cir. 2007).

11

Here, the ALJ properly found that the objective medical evidence of record did not support a finding that plaintiff suffered from a severe impairment from his alleged onset date of June 1, 2005 through his last date insured. As noted by the Commissioner, the record contains only one piece of evidence pre-dating plaintiff's last date insured of September 5, 2005. On July 27, 2005, a doctor at University Hospital in Cincinnati reported that plaintiff had "significant pain" which caused "difficulty with ambulation." (Tr. 198)³. The letter further indicated that plaintiff's "disability can be expected for the next 3-6 months." (*Id.*). However, the letter did not include any diagnosis of an impairment nor any objective clinical studies or findings. *See* 20 C.F.R. §§ 404.1508 (impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings, and not solely by claimant's statement of symptoms); 404.1528(a) (claimant's own description of impairment is not enough to establish existence of that impairment). Moreover, as noted by the ALJ, the July 27, 2005 letter did not indicate that plaintiff's condition was expected to last 12 months. *See* 42 U.S.C. § 423(d)(1)(A) (plaintiff must prove that his disabling impairments are expected to last for a continuous period of twelve months).

The ALJ's finding that plaintiff did not establish that he had a "severe" impairment or combination of impairments at the time his insured status is also supported by the opinion of Dr. Freihofner, the reviewing state agency physician. (Tr. 189). Dr. Freihofner reviewed all the medical evidence in late 2006, and opined that there was insufficient evidence of a severe medically determinable impairment prior to September 30, 2005. (Tr. 189).

---

³ The record also indicates that an MRI was scheduled for May 11, 2005. (Tr. 200). The results are not in the record and there is no indication that the MRI was performed.

12

Plaintiff, relying on *Blakley v. Commissioner*, 581 F.3d 399 (6th Cir. 2009), argues that the ALJ improperly relied on Dr. Freihofner's opinion because he did not review the evidence that was later submitted from 2005. *See Blakley*, 581 F.3d at 408-09 (ALJ erred in affording controlling weight to the opinions of state agency non-examining sources whose opinions were not based on a complete review of the record). Plaintiff's reliance on *Blakley* is misplaced. In *Blakley*, the non-examining sources did not have the opportunity to review over 300 pages of later-submitted medical evidence and treatment notes from plaintiff's treating sources. *Id.* at 409. The ALJ's decision failed to indicate whether she considered those facts before giving greater weight to an opinion that was not based on a review of a complete case record. *Id.* Accordingly, the court held that the ALJ failed to follow the applicable procedural requirements in reaching her disability determination, thereby precluding meaningful review. *Id.* at 410.

Here, the record contains three pages of information pre-dating plaintiff's last date insured of September 5, 2005: the July 27, 2005 letter discussed above, a document purportedly scheduling the July 27, 2005 appointment, and a document scheduling an MRI. (*See* Tr. 198-200). The ALJ properly considered the evidence of record, and his decision clearly indicates that he reviewed the three pages of information pre-dating plaintiff's last date insured of September 5, 2005. (Tr. 12). Accordingly, the ALJ's determination that the objective medical evidence did not support a finding that plaintiff suffered from a severe medically determinable impairment on or before his September 30, 2005 date last insured is supported by substantial evidence and should not be disturbed.[4]

---

[4] Plaintiff argues generally that because he was found to be disabled as of August 2006, he must have been suffering from a severe impairment prior to September 30, 2005. However, at this step in the sequential analysis, plaintiff bears the burden of proving he has a severe impairment, and the Court is

### II. The ALJ did not err in determining plaintiff's onset date of disability

Plaintiff alleges that the ALJ erred in his application of Social Security Ruling 83-20 to establish the onset date of disability. Plaintiff asserts the that medical history in this case favors an onset date of disability of June 1, 2005. Plaintiff's assertion lacks merit.

Once a finding of disability is made, the ALJ must determine the onset date of the disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997). Social Security Ruling 83-20 governs the determination of disability onset date. The ruling states, in relevant part:

> Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.

SSR 83-20, 1983 WL 31249, at *1. In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. *Id.* at *3. The ruling further states that "the medical evidence serves as the primary element in the onset determination." *Id.* at *2. As noted above, the record does not contain any objective medical evidence to support a finding of disability at the time of plaintiff's alleged onset date of June 1, 2005.

Plaintiff further argues that the ALJ erred under SSR 83-20 in requiring contemporaneous medical evidence for the period before September 30, 2005. Plaintiff asserts the evidence of record beginning in 2006 establishes that his low back and leg pain became disabling in 2005.

---

unable to make such an inference without any supporting evidence. *See* 20 C.F.R. § 404.1520.

(Doc. 12, p. 2). *See Higgs,* 880 F.2d at 863 (post-insured status evidence can be probative of whether the claimant was under a disability before the date his or her insured status expired).

Post-insured status evidence may be considered, but only if it sheds light on a claimant's condition during the insured period. *Paquette v. Sullivan,* 902 F.2d 1569, 1990 WL 66814, at *2 (6th Cir. May 21,1990) (citing *Johnson,* 679 F.2d at 605). Here, the ALJ reasonably noted that the post-insured evidence failed to show that plaintiff met the requirements for disability any time prior to September 30, 2005. (Tr. 12-13). The ALJ reviewed the evidence which post-dated the date last insured and reasonably determined that such evidence only addressed plaintiff's condition after his date last insured, and did not relate plaintiff's condition back to the relevant time period.

Notably, plaintiff was seen in the emergency room on August 20, 2006, nearly a year after the expiration of his insured status. (Tr. 177-178). Plaintiff complained of right knee pain that had been "present for more than a month," and left knee pain that had been "present intermittently for the last week." (Tr. 177). Plaintiff was diagnosed with arthritis, discharged with pain medication, and advised he could "go back to work." (Tr. 178).

Plaintiff was next seen by Dr. Glaser in October 2006 complaining of pain in his feet, ankles and knees. (Tr. 180-187). Dr. Glaser diagnosed morbid obesity, degenerative joint disease, and untreated and uncontrolled hypertension. (Tr. 182). Dr. Glaser opined that plaintiff appeared capable of performing only a mild amount of ambulating, standing, bending, pushing, pulling, lifting, and carrying heavy objects. Dr. Glaser concluded that plaintiff should be able to perform sedentary tasks commensurate with his age. (Tr. 182). As reasonably noted by the ALJ, Dr. Glaser's report does not make any findings with respect to plaintiff's impairments or

15

limitations during the relevant period and only addresses plaintiff's condition after the date his insured status lapsed. (Tr. 13).

A treatment note from University Hospital on September 6, 2006, indicated that plaintiff had severe arthritis in both ankles and knees "which may last five years or may be for the rest of his life." (Tr. 197). However, there is nothing in this note relating plaintiff's condition back to September 30, 2005, his date last insured.

Dr. Friehofner, the state agency physician, performed a physical residual functional capacity assessment on November 28, 2006, wherein he opined that there was insufficient evidence to evaluate plaintiff's impairments prior to his last date insured. (Tr. 189).

The record also includes plaintiff's treatment notes from the Mayfield Neurological Institute from January 2007 to June 2007. (Tr. 202-210). Although plaintiff reported that his leg pain began in June 2005 (Tr. 204), the treatment notes do not make any specific findings regarding his condition during the relevant period.

Accordingly, although the ruling was not specifically mentioned, the ALJ followed the requirements of SSR 83-20, and provided a thorough analysis of the evidence of record and clearly articulated the rationale for his decision. *See McClanahan v. Commissioner of Social Sec.*, 193 Fed. App'x 422, 426 (6th Cir. 2006) ("Because the ALJ conducted the analysis required by the Ruling [83-20], his failure to mention it by name is not fatal to the decision") (internal citation omitted). As such, plaintiff's second assignment of error is without merit.

### III. The ALJ did not err in evaluating plaintiff's credibility

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers,* 486 F.3d at 247 (citations omitted). In light of

the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton*, 246 F.3d at 773. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst*, 753 F.2d at 519. In this regard, Social Security Ruling 96-7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other

symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

In this case, the ALJ found plaintiff's testimony regarding his pain and resulting limitations to be credible. (Tr. 12). However, "without medical evidence to support it," the ALJ found that plaintiff's testimony could not justify a finding of a medically determinable impairment through the date last insured. *Id.* Plaintiff contends that the ALJ erred in determining that he was not fully credible by failing to comply with SSR 96-7p and improperly rejecting plaintiff's disabling testimony based on a "perceived lack of objective medical findings for the period prior to September 5, 2005." (Doc. 6, p. 6).

Contrary to plaintiff's assertion, the ALJ considered plaintiff's testimony about his symptoms and limitations and properly concluded that there was no objective medical evidence to support his testimony for the relevant period. (Tr. 12-13). The record contains only three pages of documents during the relevant period, and that information does not establish that plaintiff suffered from a severe impairment at that time. There is simply no evidence, objective or otherwise, to support plaintiff's testimony of a severe impairment through the date last insured. *See Thoroughman v. Chater*, 91 F.3d 144, 1996 WL 316518, at *1 (6th Cir. 1996) (As the ALJ cited to the fact that there is no objective medical evidence to support plaintiff's complaints of disabling pain, the ALJ's credibility determination was proper).

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of H.H.S.*, 987 F.2d 1230, 1233 (6th Cir. 1993); 42 U.S. C. § 405(g). The ALJ properly evaluated plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed.

Based on the foregoing, plaintiff's assignments of error are without merit.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 5/11/2011

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DICK DENNIS SHELBY,
    Plaintiff

Case No. 1:10-cv-316
Spiegel, J.
Litkovitz, M.J.

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

20